IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| MARGARET BOAZ, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:09-cv-02232-dkv |
| | ) | |
| | ) | |
| FEDERAL EXPRESS CORPORATION d/b/a | ) | |
| FEDEX EXPRESS and | ) | |
| FEDEX CUSTOMER INFORMATION | ) | |
| SERVICES, INC., | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

_____

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT
_____

In this employment discrimination lawsuit, filed originally on April 17, 2009, the plaintiff, Margaret Boaz, alleges that the defendants, Federal Express Corporation d/b/a FedEx Express and FedEx Customer Information Services, Inc. ("FCIS") (collectively "FedEx"): (1) violated the Fair Labor Standard Act ("FLSA") by discriminating against her because of her sex in violation the Equal Pay Act Amendment of the FLSA ("EPA"), failing to pay her overtime compensation, and failing to keep accurate records and working her outside of her job classification; (2) violated the Tennessee Human Rights Act ("THRA") by discriminating against her because of her sex; (3) violated Title VII of the Civil Rights Act of 1964 ("Title VII") by discriminating against her because of her sex; and (4) retaliated against her for complaining about gender

discrimination in violation of Title VII.  On May 8, 2010, FedEx filed a motion for summary judgment regarding all of Boaz's claims, and Boaz filed a motion for partial summary judgment regarding her claims for disparate pay in violation of the EPA, THRA, and Title VII.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.  Now before the court are these cross motions for summary judgment.

A hearing was held on September 1, 2010.  After considering arguments of counsel, the briefs of the parties, and the record as a whole, the court denies Boaz's motion for partial summary judgment, and grants in part and denies in part FedEx's motion for summary judgment.

## I.   UNDISPUTED FACTS

Based on each party's statement of undisputed material fact submitted in support of the cross motions for partial and total summary judgment and the responses of the opposing party and for the purposes of these cross motions, the court finds that the following facts are undisputed:

1. On December 26,1996, Boaz applied for employment with FedEx and was hired on February 17, 1997, in Customer Service on a part-time basis.

2. As part of her employment application, Boaz received and signed an Employment Agreement, indicating that she read, understood, and agreed to FedEx's terms and conditions of

employment.

3. The Employment Agreement consists of fifteen paragraphs and includes a statute of limitations for filing suit against FedEx. Specifically, Paragraph 15 provides: "To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first."

4. The Employment Agreement also includes a dispute resolution procedure.  Specifically, Paragraph 12 provides:

> Dispute Resolution Procedure: I fully understand my employment status, and I agree and understand that I must use the appropriate Federal Express policies to resolve my work-related complaints and any other controversy arising out of my employment or the termination of my employment.

5. FedEx's Guaranteed Fair Treatment Procedure/EEO Complaint Process, Policy 5-5, which was in effect in 2003 for FedEx Express employees "provides a procedure for handling employee complaints, problems, concerns, and allegations of employment discrimination." The GFT Procedure applies to all allegation of discrimination.  It is a 3-step process.

6. FCIS's Open Door Policy, Policy 5-40, effective June 1, 2006, is designed to "encourage[s] employees to communicate their ideas and concerns directly to management."  There is no time restriction in using the Open Door Policy and no limit on the number of Open Door issues an employee can submit but an employee

may submit only one Open Door on any particular concern. The Open Door policy provides that the Fair and Impartial Review/EEO Procedure, Policy 5-5, should be used for specific employee complaints such as discrimination because of sex.

7. In or about October 2003, Boaz was employed as a Grade 7 Quality Assessor, a non-exempt position with FedEx Express.

5. In late 2003 and early 2004, FedEx went through a reorganization referred to as I-Services. As part of the reorganization a new quality department for revenue operations was created under the supervision of Denyce Burns.

6. One of the persons affected by the I-Services reorganization was Jim Terrell, a Grade 27 Project Management Advisor ("PMA"), who was responsible for Ht US Print & Archive Vendors supporting the nightly corporate load for Worldwide Revenue Operations ("WRO"). As part of the I-Services reorganization, his position was eliminated, he elected to take a voluntary buy-out, and the duties he was performing at that time, specifically those relating to the print vendor liaison function, were moved under the supervision of Burns.

7. In or about December 2003, Boaz was notified that she would shadow Terrell in order to gain knowledge of the day to day operation of the print vendor liaison duties. Initially, Boaz was asked to document all of Terrell's print vendor liaison duties.

8. From January 2004 through June 15, 2008, Boaz performed

4

the duties Terrell was performing in January 2004.  Boaz claims the duties she performed were identical to those Terrell performed as a Grade 27 PMA.

9.  From January 2004 until June 2008, Boaz carried a beeper 24 hours a day, 7 days a week.

10.  After the I-Services reorganization, Burns, along with the Human Resources and Compensation Departments with FedEx, determined that the print vendor liaison duties formerly performed by Terrell did not fit a Grade 27 Project Management Advisor position any longer, but instead fit either a Grade 25 Quality Administrator or Grade 23 Quality Specialist position.

11.  A Grade 27 PMA position requires, among other things, a bachelor's degree in business, computer science, accounting, finance, or a related degree; seven years of exempt experience in project/program management, and experience in planning major projects.  It requires the employee to lead multiple complex projects and has a pay scale different from the pay scale for a Grade 23 position.

12.  The positions of Grade 25 Quality Administrator and Grade 23 Quality Specialist were posted and interviews were held to fill the positions.

13.  Boaz applied for and was ultimately denied the right to interview for the Grade 25 Quality Administrator position.  Human Resources and Compensation determined that Boaz did not meet the

5

qualifications to be in a Grade 25 position which included a requirement that she have five years exempt level experience in project management.

14. On September 17, 2004, Boaz filed an internal Guaranteed Fair Treatment complaint with FedEx Express challenging FedEx's decision to deny her an interview for the Grade 25 position. Through the Guaranteed Fair Treatment process, on October 6, 2004, FedEx Express upheld its determination that Boaz was not qualified to hold a Grade 25 position.

15. Boaz chose not to proceed to Step 2 in the Guaranteed Fair Treatment process and did not appeal FedEx Express's determination that she was not qualified for a Grade 25 position.

16. On December 1, 2004, Boaz was offered and she accepted an exempt position as a Grade 25 Quality Administrator.

17. On February 8, 2005, Boaz wrote a letter to Janice Avery-Walthall, her Compensation Advisor for FedEx Express, requesting a compensation review for the period December 15, 2003 through December 1, 2004, for "duties being performed as a Grade 27 PMA." According to Boaz's affidavit testimony, Walthall met with Boaz and told her that there was nothing either one of them could do.

18. On May 1, 2005, Boaz was notified that her Grade 25 position was mis-classified. On May 18, 2005, Boaz accepted an exempt position as a Grade 23 Quality Assurance Systems Analyst.

6

19.   In or about June 2006, FedEx Global Strategic Planning moved under the umbrella of FedEx Customer Information Services (FCIS), a division of FedEx Services, and Boaz became an employee of FCIS.

20.   In addition to filing the September 2004 Guaranteed Fair Treatment complaint while employed by FedEx Express, Boaz also filed three Open Door complaints with FCIS in April 2007, July 2007, and May 2008.

21.   On April 23, 2007, Boaz filed her first Open Door request, addressed to Burns, in which she complained that she was not being compensated for carrying the beeper and working off-hours from February 2004 through the time of filing her complaint.

22.   In Burn's written response to Boaz's first Open Door complaint, FCIS determined that as of June 1, 2007, Boaz could qualify under FedEx's Policy 3-44 and be awarded beeper pay going forward or continue to use a flexible schedule to compensate for any work required outside of a normal work schedule. Burns wrote: "[Y]ou have been encouraged to use a flexible schedule to compensate for any work required outside of a normal work schedule.  Effective June 1, 2007, you will be given the option to continue the flexible schedule or submit time to be paid as described in P3-44."

23.  Not being satisfied with the determination, Boaz filed her second Open Door on July 13, 2007, this time addressed to Gregory B. Richards, in which she again requested compensation for carrying the beeper from February 2004 until June 2007 while acknowledging

7

that FCIS had determined in her first Open Door complaint that her "job was not eligible for beeper pay between February 2004 and June 1, 2007." Boaz did not receive a response to her second Open Door complaint.

24. On May 21, 2008, Boaz filed her third Open Door in which she complained of the same issues about which she had complained in her second Open Door, that is, not being compensated for carrying the beeper from February 2004 until June 2007.[1] As she stated, she was "continuing up the management chain." By letter dated June 3, 2008, Vickie Engelman, Human Resources Manager for FCIS, acknowledged receipt of Boaz's third Open Door complaint and met with Boaz on June 10, 2008, on July 1, 2008, and October 30, 2008. Boaz did not receive a formal written response to her third Open Door complaint.[2]

25. On June 5, 2008, Boaz was notified that her position as a Grade 23 Quality Assurance Systems Support Analyst was being eliminated.

---

[1] Boaz claims that in her third Open Door complaint, she also complained of not receiving "equal pay." The court interprets her third Open Door complaint as complaining of not receiving equal pay as her peers for carrying a beeper and not a complaint for not receiving equal pay as a male.

[2] A "draft" Inter-Office Memo dated May 8, 2009, from Vickie Engelman and Deborah Baur to Mary Beard with a copy to Jaye Dubard marked "PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT IN ANTICIPATION OF LITIGATION" and referencing "Margaret Boaz Open Door Complaints" was produced by the defendants during discovery on March 5, 2010 in response to a discovery request. Boaz claims that this was the written response to her third Open Door Complaint.

26.  On June 12, 2008, Boaz accepted a position as a Grade 22 Associate Business System Support Analyst with FCIS and on Sunday, June 15, 2008, ceased performing the duties she claims were previously performed by Terrell.  Boaz received no reduction in pay or benefits.  On June 30, 2008, Boaz received her last paycheck as a Grade 23 Quality Assurance Systems Support Analyst.

27.  Upon Boaz's acceptance of the Associate Business System Analyst position, Margaret Williams, a Grade 27 PMA, assumed Boaz's duties relating to the print vendor liaison function.

28.  On April 8, 2009, Boaz filed a Charge of Discrimination with the EEOC alleging discrimination based on sex and retaliation.

29.  On April 17, 2009, Boaz filed her original complaint in this court, alleging only violations of the Fair Labor Standards Act.

30.  On June 10, 2009, Boaz filed her first amended complaint in which she added a claim under the Tennessee Human Rights Act and an additional claim under the Fair Labor Standards Act for working out of class.

31.  In or about June 2009, Boaz received a performance rating of 2.3 out of 4.0.

32.  On November 10, 2009, Boaz filed her Second Amended Complaint asserting for the first time claims for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

33.  On March 24, 2010, Boaz filed an Amended Charge of

9

Discrimination with the EEOC.

34.  On April 20, 2010, the EEOC issued Boaz an amended notice of right-to-sue.

35.  On July 7, 2010, Boaz filed her Corrected Third Amended Complaint consolidating all of her prior claims and adding additional factual allegations.

III.  ANALYSIS

A.  Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam).  The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact at issue in the case.  *LaPointe,* 8 F.3d at 378.  This may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the nonmoving party must go beyond the pleadings

10

and present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)(emphasis in original); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, "this [c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378.

11

Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Cross-motions for summary judgment do not guarantee entry of summary judgment for one of the movants. Each motion must be considered on its own merits, and both may be denied. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

B. <u>Boaz' Claims under the FLSA</u>

Boaz assert claims against FedEx for three violations of the FLSA: (1) that FedEx discriminated against her because of her sex in violation of the EPA, an amendment to the FLSA (Corrected Third Am. Compl. III., ¶ 8); (2) that FedEx failed to properly pay her overtime (Corrected Third Am. Compl. III., ¶ 9); and (3) that FedEx worked her outside of her job description, which constitutes a status mis-classification by pay and job code and a failure to comply with the record-keeping requirements of the FLSA (Corrected Third Am. Compl. III., ¶ 22). FedEx opposes Boaz's claims and argues: (1) that Boaz's FLSA claims are barred by the contractual limitations provision of her Employment Agreement; (2) to the extent they are not contractually barred, Boaz's FLSA claims are barred by the applicable statute of limitations; and (3) even if Boaz's FLSA claims are not barred by the applicable statute of limitations, Boaz cannot establish a prima facie case for any of her FLSA claims.

12

1. *The EPA Violation Claim*

Boaz alleges that FedEx willfully violated the EPA, 29 U.S.C. § 206, which prohibits discrimination between male and female employees by paying lower wages to employees of one sex than to those of the other sex when the work they perform requires equal skill, effort, and responsibility and is performed under similar working conditions. (Corrected Third Am. Compl. III., ¶ 8). Specifically, Boaz claims that FedEx failed to pay her as a Grade 27 PMA when it had previously compensated a male employee, Jim Terrell, at a Grade 27 for doing substantially the same work.

Actions under the FLSA must be commenced within two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Boaz asserts her claims are timely and that the three year statute of limitations applies because FedEx's violations of the FLSA are willful. FedEx argues that Boaz's FLSA claims are time-barred because they are governed by the six-month limitations provision in her Employment Agreement.

a. Contractual Limitations Provision

The Employment Agreement, which Boaz signed in February of 1997 when she was first hired by FedEx, contains a contractual limitations provision. The contractual limitations provision states, "To the extent the law allows an employee to bring legal action against FedEx, I agree to bring that complaint within the time

prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first." Although Boaz does not dispute that she signed the Employment Agreement which contained the provision, she argues that FLSA claims cannot be abridged by a contractual limitations period, the six-month period is unreasonable, and, even if it is found to be reasonable, it does not bar her FLSA claims because the six-month time period was tolled until FedEx's internal complaint process was completed.

It is well settled that parties may agree to shorten applicable statute of limitations through contractual limitations provisions, as long as the shorter period is reasonable. *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608 (1947). The Sixth Circuit has upheld six-month contractual limitations provisions and concludes that "[t]here is nothing inherently unreasonable about [them]." *Myers v. W.-S. Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988). Indeed, another judge in this district recently held that the six-month limitations provision in FedEx's Employment Agreement was enforceable and time-barred a plaintiff's ADEA age discrimination claim. *Joe M. Ray v. FedEx Corporate Servs.*, Inc., 668 F. Supp. 2d 1063 (W.D. Tenn. 2009)(J. McCalla).

Relying on *Wineman v. Durkee Lakes Hunting & Fishing Club Inc.*, 352 F. Supp. 2d 815, 823 (E.D. Mich. 2003), Boaz asserts, however, that FLSA claims, unlike ADEA claims, cannot be shortened by contractual limitation provisions. In *Wineman*, the Eastern District

14

of Michigan held that the "FLSA cannot be abridged, compromised, or waived by private agreement" and refused to enforce a similar six-month contractual limitations period.  *Id.*

While FedEx agrees that substantive rights provided under the FLSA cannot be contractually waived, it argues that the *Wineman* court was incorrect in concluding that procedural rights are no different.  FedEx notes that the *Wineman* court relied on the Supreme Court's decision in *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728 (1981), which held that a plaintiff's FLSA claim was not barred by a prior arbitration agreement and unsuccessful arbitration.  The Supreme Court, however, in *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1468 (2009), recently limited the scope of the *Barrentine* rule to the unique facts in *Barrentine* and held that a plaintiff can contractually agree to an enforceable arbitration agreement.  In light of the Court's decision in *Penn Plaza*, FedEx asserts that *Wineman* cannot be relied on as prohibiting contractual agreements to limit procedural rights under the FLSA and cites a variety of courts that have upheld contractual limitation provisions as to other federal statutes.  *See, e.g., Thurman v. DaimlerChrysler,* Inc., 397 F.3d 352, 257-59 (6th Cir. 2004) (holding plaintiff's § 1981 claim time barred by a six-month contractual limitations period); *Northlake Reg'l Med. Ctr. V. Waffle House Sys. Emp. Benefit Plan*, 160 F.3d 1301, 1303-04 (11th Cir. 1998) (holding that the contractual limitations provision time barred plaintiff's

15

ERISA claim); *Badgett v. Federal Express Corp.*, 378 F. Supp. 2d 613, 626 (M.D.N.C. 2005) (upholding the six-month limitations clause and denying plaintiff's emotional distress, § 1981, and FMLA claims as untimely).

In light of the Supreme Court's ruling in *Penn Plaza,* the court agrees with FedEx that procedural rights of the FLSA can be abridged by contractual limitations and declines to follow *Wineman*.[3] "It is well-established that statutes of limitations are procedural in nature," not substantive. *Ray v. FedEx Corporate Servs.*, Inc., 668 F. Supp. 2d at 1068. The court also finds that FedEx's six-month contractual limitations provision is reasonable because Boaz had sufficient opportunity to learn of the alleged discrimination, investigate her claim, and file a complaint. Likewise, the court finds that the execution of the contractual limitations clause to be procedurally reasonable. Boaz read the Employment Agreement, signed the document attesting that she understood its terms, and did not question the limitations clause or object to it. Whether the contractual limitations period effectively time-bars Boaz's EPA claim, however, depends on when the six-month time period commences.

    b.   Impact of FedEx's Internal Grievance Procedures on the Six-Month Contractual Limitations Provision

Boaz argues that even if the court finds the six-month contractual time period is reasonable, it does not bar her FLSA

---

    [3] In any event, *Wineman* is not controlling in this district.

claims because the limitations period should be tolled until FedEx's internal grievance process is completed. Boaz submits that the earliest date the six-month time period should commence is October 30, 2008, when she had her final meeting with FedEx regarding her third Open Door complaint. She also submits that the latest date the six-month time period should commence is November 6, 2008, when FedEx allegedly promised to have a report for Boaz concluding her third Open Door complaint. Because Boaz filed her complaint containing her EPA claim with the court on April 17, 2009, the six-month contractual limitations period would not bar Boaz's EPA claim if the court adopted Boaz's line of reasoning that the limitations period does not commence until October 30, 2008 or November 6, 2008.

In response, FedEx maintains that the internal grievance procedure does not toll the six-month limitations period and asserts that the six-month period commences no later than when the alleged discriminatory practice ceases. FedEx argues that, at the very latest, the alleged discriminatory practice ceased on June 30, 2008, the last time Boaz received a paycheck for allegedly performing Terrell's Grade 27 PMA duties, if not before then.[4] If the court adopts FedEx's line of reasoning, Boaz's EPA claims would be time-barred because she waited over nine months to file a complaint with the court.

---

[4] FedEx asserts that the date an allegedly discriminatory decision occurred related to Boaz's claim that she should have been paid as a grade 27 PMA was when she was offered and accepted a Grade 23 position, that is, May 18, 2005.

The question of whether an internal grievance procedure tolls the applicable statute of limitations has been addressed by the Supreme Court. *See Electrical Workers v. Robbins & Meyers, Inc*., 429 U.S. 229 (1976). In *Electrical Workers*, the Supreme Court held that the existence and pendency of a grievance procedure does not toll the running of the limitations period. *Id.* The Court explained in a later opinion that an employer's grievance procedure is a remedy for prior employment practices to assure fairness and "should not obscure the principle that limitations periods normally commence when the employer's decision is made." *Del. State Coll*., 449 U.S. 250, 261 (1980). *See also Chance v. Mahoning Cnty., Ohio Sheriff's Dep't*, 105 Fed. Appx. 644, 647 (6th Cir. 2004) ("It is well settled in this circuit that union grievance procedures . . . do not toll the statute of limitations.").

In the present case, Boaz utilized two of FedEx's internal grievance procedures. In 2004, while employed with FedEx Express, Boaz filed a GFT Complaint challenging FedEx Express's determination that she did not meet the minimum qualifications for a Grade 25 position. The GFT was denied, the determination was upheld, and Boaz did not appeal. The determination during the GFT process that Boaz did not meet the minimum qualifications for Grade 25 position was tantamount to a determination that Boaz was not qualified for a Grade 27 position, which is two grade levels higher. When Boaz did not appeal, the determination became final.

18

Thus, as early as 2004, Boaz believed she was performing the same job duties that Terrell had previously performed and she knew that FedEx had determined that she was not entitled to be paid as a Grade 27 PMA or even a Grade 25. Nevertheless, Boaz continued to perform Terrell's duties until June 12, 2008, when she accepted a different position as a Quality Assurance System Analyst. She received her last paycheck for those duties on June 30, 2008.

While under the umbrella of FCIS, Boaz filed three Open Door complaints in which she complained that she was not being compensated for carrying the beeper and working off-hours from February 2004 through the time of filing her complaint. She received a timely written response to her first Open Door Complaint but not to the second and third ones. However, Boaz's second and third Open Door complaints were not proper under FCIS's Open Door policy. Even though there is no limit on the number of Open Door issues an employee may submit, under the policy, an employee may submit only one Open Door complaint on a single issue. It is not subject to appeal. In addition, the use of FCIS's Open Door policy to address concerns of sex discrimination is also not an appropriate use of the policy. According to FCIS's Human Resources policy, an employee complaining of sex discrimination should use FCIS's FAIR/EEO procedure. Boaz failed to do so. Therefore, there was no internal grievance concerning unequal pay because of gender which would toll the statute of limitations.

19

Moreover, while FedEx does "expect" its employees to use the appropriate internal grievance procedures to resolve employment related disputes, FedEx's procedures are not mandatory. Boaz cannot continually file complaints with FedEx over a period of four years using FedEx's internal grievance procedures inappropriately and reasonably expect the contractual limitations period to be tolled.

The pendency of Boaz's third Open Door complaint does not toll the six-month contractual limitations period. At the latest, the six-month limitations period started to run when Boaz received her last paycheck on June 30, 2008. Thus, Boaz's claim that FedEx violated the EPA, filed almost a year after FedEx's allegedly discriminatory practice ceased, is untimely and barred by the six-month contractual limitations provision.

FedEx's motion for summary judgment on Boaz's EPA claim under the FLSA is granted, and Boaz's summary judgment motion on this claim is denied.

2.    *The Overtime and Oncall/Recall Compensation Claim*

Boaz also alleges that FedEx violated the FLSA by failing to properly pay her overtime for carrying a beeper from February 2004 to June 2007.[5] (Corrected Third Am. Compl. III., ¶ 9). Boaz does not seek summary judgment on her claim of unpaid overtime and/or on

---

[5]    Boaz seems to use the terms "overtime compensation" and "on call or recall compensation" interchangeably. Under the FLSA, exempt employees are not eligible for overtime compensation, and time spent on call or on recall may be considered as time worked for purposes of calculating overtime for non-exempt employees. 29 U.S.C. § 213(a)(1).

call/recall time; however, FedEx seeks summary judgment in its favor on this claim on the ground that Boaz's FLSA claims are time-barred pursuant to the six-month contractual limitations period, and, alternatively, on the ground that Boaz cannot establish a claim for unpaid overtime because she was not eligible for overtime compensation under the FLSA.  FedEx's first ground for summary judgment is determinative; therefore, the court will limit its discussion to whether Boaz's claim was timely filed.

For the same reasons as articulated under Boaz's EPA claim, the court finds that the six-month limitations period is reasonable, applies to her overtime claim, and is not tolled by FedEx's internal grievance procedure.  Whether FedEx is entitled to summary judgment on Boaz's claim for overtime compensation depends on when the six-month limitation period commences.  FedEx argues that the six-month time period began to run on May 24, 2007, when Boaz first received notice that her job was ineligible for beeper pay from February 2004 to June 1, 2007.  Boaz disagrees and argues that she did not get a full response to her three Open Door complaints concerning beeper pay and the time period does not commence until FedEx fully addressed her request for beeper pay.

On April 23, 2007, Boaz filed her first Open Door with FCIS, requesting that FedEx review its 3-44 Policy and compensate her for time that she claims to have been "on call" and also for time she claims to have been "recalled."  Specifically, Boaz asserts she was

21

required to carry a beeper twenty-four hours a day, seven days a week starting February 1, 2004. On May 24, 2007, FedEx responded to Boaz's Open Door by giving her the option to continue using a flexible schedule to compensate for any work required outside a normal work schedule or submit time to be paid for carrying a beeper, effective June 1, 2007, going forward. Unhappy with FedEx's response, Boaz filed a second Open Door complaint on July 13, 2007, addressed to different people, stating that she disagreed with FedEx's decision that her job was ineligible for beeper pay between February 2004 and June 1, 2007, and requested again that she receive on call and recall compensation during that time. Although Boaz admits FedEx awarded her beeper pay effective June 1, 2007, she now argues that FedEx failed to address the retroactive component of beeper pay from 2004 to 2007 and never responded to her second Open Door.

The court finds that the six-month limitations period on this FLSA claim began to run on May 24, 2007, when Boaz first learned that she was ineligible to receive beeper pay from February 2004 until June 1, 2007. Indeed, Boaz concedes in her second Open Door complaint that FedEx refused in its response to her first Open Door complaint to pay her beeper pay prior for the period of February 2004 to June 1, 2007. At that point, Boaz knew of FedEx's allegedly discriminatory decision and could have filed a complaint with the court instead of submitting a second Open Door. However, Boaz did

not file a complaint until April 17, 2009, nearly 2 years after she was notified that she would not receive beeper pay for the period in question.  In order for Boaz's claim to be timely under the six-month contractual limitation period, she would have had to file a complaint before November 24, 2007, which she failed to do. Accordingly, Boaz's claim that FedEx violated the FLSA by failing to properly pay her overtime is time-barred.

FedEx's motion for summary judgment on Boaz's overtime claim under the FLSA is granted.

3.   *The Classification* and *Record-Keeping Requirements Claim*

In her final FLSA claim, Boaz states that FedEx failed to comply with the record-keeping requirements of the FLSA and worked her outside of her job description, which constitutes a status mis-classification under the FLSA. (Corrected Third Am. Compl. III., ¶ 22).  Boaz does not seek summary judgment on this claim; however, FedEx seeks summary judgment on this FLSA claim on the same ground - the claim is time-barred pursuant to the six-month contractual limitations provision.  For the same reasons stated under Boaz's EPA claim, the court finds that the six-month limitations period is reasonable, applies to this claim, and is not tolled by FedEx's internal grievance procedure.  However, whether FedEx is entitled to summary judgment depends on when the six-month limitation period commences.

Boaz asserts that from February 1, 2004, until November 30,

2004, FedEx failed to keep accurate records of her hours and failed to pay her overtime of 11.5 hours. During this period, Boaz was a non-exempt Grade 7 employee, responsible for FedEx's WRO corporate nightly load and eligible for overtime pay. In order for Boaz to file a timely claim for FedEx's alleged failure to keep accurate records, Boaz should have filed within six months of November 30, 2004, when FedEx's alleged discriminatory practice ceased. Boaz did not file her complaint until April 17, 2009, over 4 years later. Accordingly, her claim that FedEx violated FLSA's record-keeping requirements is time-barred.

Boaz also argues that from February 1, 2004, until June 15, 2008, FedEx worked her outside her job classification and mis-classified her by pay and job code in violation of the FLSA. From February 1, 2004, to November 30, 2004, Boaz was a non-exempt employee. On December 1, 2004, Boaz was reclassified as an exempt employee. Although she was reclassified as an exempt employee, Boaz continued to support the WRO nightly load and carried a beeper until June 15, 2008. Boaz argues that this is evidence FedEx mis-classified her position by pay and job code and worked her outside her job classification. In order for Boaz to file a timely claim for this argument, she should have filed a complaint within six months of June 15, 2008, when FedEx's alleged discriminatory practice ceased. However, Boaz did not file a complaint until almost ten months later on April 17, 2009. Accordingly, Boaz's

claim that FedEx mis-classified her position by pay and job code and worked her outside her job classification in violation of the FLSA is time-barred.

FedEx's motion for summary judgment on Boaz's third claim under the FLSA is granted.

C.   Boaz's THRA Claim of Gender Discrimination

On June 10, 2009, Boaz amended her original complaint to add that FedEx violated the THRA by failing to pay her as a Grade 27 PMA when it had previously compensated a male employee, Jim Terrell, for doing substantially the same work.   (Corrected Third Am. Compl. III., ¶ 10).   On May 8, 2009, both parties filed cross motions for summary judgment on the THRA claim.   FedEx argues (1) that Boaz's THRA claim is barred by the contractual limitations provision of her Employment Agreement; (2) to the extent her THRA claim is not contractually barred, it is barred by the applicable statute of limitations; and (3) even if Boaz's THRA claim is not barred by the applicable statute of limitations, Boaz cannot establish a prima facie claim under the THRA.

In general, the purpose of the THRA is to protect individuals from discrimination based on race, creed, color, religion, sex, age or national origin.   *See* Tenn. Code Ann. § 4-21-101.   A cause of action under the THRA must be filed within one year after the discriminatory practice ceases.   *See* Tenn. Code Ann. § 4-21-311(d). The Tennessee Supreme Court recently ruled that discriminatory pay

is a continuing violation under the THRA and concluded that a plaintiff may seek backpay for the duration of the discriminatory practice. *Booker v. The Boeing Co.*, 188 S.W.3d 639, 649 (Tenn. 2006).

In the present case, Boaz asserts that FedEx paid her less than it had previously paid a male employee for duties she performed from early 2004 until June 15, 2008. She concedes that FedEx's failure to pay comparable wages ceased on June 15, 2008, and that the last time she received a paycheck for performing PMA duties was on June 30, 2008. FedEx argues that the six-month contractual limitations provision requires that Boaz file a complaint for a THRA violation before December 30, 2008; therefore, Boaz's THRA claim is time-barred. Boaz argues that her claim was timely under THRA's one year limitations period and that the six-month contractual limitations provision is unreasonable.

The facts underlying Boaz's THRA claim are identical to Boaz's EPA claim under the FLSA. Accordingly, the same analysis and reasoning from the court's ruling on Boaz's claim under the EPA apply to Boaz's THRA claim. As such, the court finds that the six-month contractual limitations period is reasonable, it is not tolled by FedEx's internal grievance process, and it began to run on June 30, 2008, when Boaz received her last paycheck for performing Terrell's duties. Boaz did not file her THRA claim until June 10, 2009; therefore, it is time-barred.

26

FedEx's motion for summary judgment on Boaz's THRA claim is granted, and Boaz's summary judgment motion on this claim is denied.

D. Boaz's Title VII Claims

On November 10, 2009, Boaz filed her second amended complaint asserting that FedEx violated Title VII by (1) discriminating against her because of her sex and (2) retaliating against her because she complained about gender discrimination. (Corrected Third Am. Compl. IV., ¶ 26). In response, FedEx argues that (1) Boaz cannot establish a prima facie case of discrimination or retaliation under Title VII and (2) even if Boaz could establish a prima facie case of discrimination, she cannot demonstrate that FedEx's legitimate, non-discriminatory reasons for its actions are pretextual.

1. *Gender Discrimination*

Boaz claims that FedEx discriminated against her in violation of Title VII by failing to pay her as a Grade 27 PMA when it had previously compensated a male employee, Jim Terrell, for doing substantially the same work. In response, FedEx argues that only allegations of discriminatory acts occurring after June 12, 2008, are timely under Title VII. FedEx also argues that Boaz cannot state a prima facie claim of Title VII discrimination because she cannot point to a similarly situated male employee who received more favorable treatment. Both parties have filed cross motions for summary judgment on this issue.

27

a.   Timeliness of the Title VII Discrimination Claim

Under Title VII, a party wishing to file a charge of discrimination must file with the EEOC within 300 days following the alleged act of discrimination, if the party "initially instituted proceedings with a State or local agency." *See* 42 U.S.C. § 2000e-5(e)(1); *El-Zabet v. Nissan N. Am., Inc.*, 211 Fed. Appx. 460, 463 (6th Cir. 2006).   After receiving a right-to-sue letter from the EEOC, a party then has 90 days to file a private Title VII action in federal district court.   See 42 U.S.C. § 2000e-5(f)(1).

In 2009, Congress amended Title VII by adding the Lilly Ledbetter Fair Pay Act (LLFPA).   42 U.S.C. § 2000e-5(e)(3)(A).   The Act is retroactive to May 29 2007.   The LLFPA provides that "an unlawful employment practice occurs, with respect to discrimination in compensation[,] . . . each time wages, benefits, or other compensation is paid." *Id.*   The effect of the LLFPA is to allow a party to receive relief for similar unlawful employment practices up to two years preceding the filing of a charge, as long as a part of the parties' claim falls within the 300 day filing period.   *See* 42 U.S.C. § 2000e-5(e)(3)(B).

Boaz filed her Charge of Discrimination with the EEOC on April 8, 2009.   If the LLFPA does not apply, only alleged acts of discrimination occurring after June 12, 2008, are timely.   However, if the LLFPA does apply, all similar unlawful acts of discrimination occurring after April 8, 2007, are timely.   Boaz argues that the

LLFPA applies to her disparate pay claim; however, FedEx argues that the LLFPA does not apply because Boaz's claim is in reality a "failure to promote" claim.

Disparate pay occurs when an employer pays different wages to employees of opposite sex for jobs that are substantially equal work. *See Conti v. Universal Enter., Inc.*, 50 Fed. Appx. 690, 698 (6th Cir. 2002)(citing Henry v. Lennox Indus., Inc., 768 F.2d 746, 752 (6th Cir. 1985)). Here, Boaz claims that she was not paid equal compensation for performing the same duties as a male worker, Terrell. Specifically, Boaz stated in her Charge of Discrimination with the EEOC that, "I believe I was discriminated against, paid less than a male and demoted to positions with less potential for pay increases, bonuses (AIC) and promotions because of my sex . . . ." Failure to promote may have occurred when Boaz was denied a Grade 25 position in 2004 but Boaz's primary complaint is that she was performing similar duties as Terrell from January 2004 until June 2008 and was getting paid less. Boaz could not have been promoted to Terrell's Grade 27 PMA position because, according to FedEx, it did not exist after the I-Service reorganization. The court finds that Boaz's Title VII discrimination claim is a disparate pay claim. As such, it alleges a continuing violation of Title VII.

Boaz concedes that FedEx's alleged discriminatory conduct ended on June 30, 2008, when she received her last paycheck for performing

29

Terrell's duties. Boaz filed her Charge of Discrimination on April 8, 2009, within 300 days of June 30, 2008, the last day she received allegedly disparate pay.  Boaz subsequently filed her complaint asserting Title VII violations on November 10, 2009, within 90 days of receiving the EEOC's right-to-sue letter.  Accordingly, Boaz's sex discrimination claim under Title VII is timely.

      b.  Prima Facie Requirements for a Gender Discrimination Claim

      When there is no direct evidence of sex discrimination shown, Title VII claims are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later modified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  To establish a prima facie case of sex discrimination, a plaintiff is required to show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably.  *See Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).  Once the plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision.  *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).

      In her attempt to establish a prima facie case of gender discrimination, Boaz asserts that Terrell, a non-protected male employee, was similarly situated and treated more favorably by

FedEx.  Specifically, Boaz maintains that she performed a position that required equal skill, responsibility, and effort that Terrell performed as a Grade 27 PMA, but was paid less.  FedEx argues Terrell and Boaz were not similarly situated.  Specifically, FedEx maintains that the quality and quantity of projects produced by Terrell as a Grade 27 PMA were very different from those performed by Boaz, who was only responsible for print vendor management.

Based on each party's statement of undisputed material facts submitted in support of the cross motions for partial and total summary judgment and the responses of the opposing party and for the purposes of these cross motions for summary judgment, the court finds that genuine issues of material facts exists as to whether Boaz and Terrell were similarly situated.  Specifically, the following facts are disputed:

1.  The nature and scope of Jim Terrell's job duties and responsibilities as a Grade 27 PMA;

2.  The nature and scope of Boaz's job duties and responsibilities; and

3.  The nature and scope of Margaret William's job duties and responsibilities as a Grade 27 PMA.

The evidence put forth by both parties present a sufficient disagreement, and the court will not weigh the evidence or make a credibility determination. As such, summary judgment is not proper for either party on this claim.

31

FedEx's motion for summary judgment on Boaz's Title VII discrimination claim is denied, and Boaz's motion for summary judgment on this claim is denied.

2. *The Title VII Retaliation Claim*

Boaz argues that FedEx retaliated against her in response to her complaints about its alleged discrimination by: (1) giving her a poor performance review in June of 2009; (2) "demoting" her to a Grade 22 on June 15, 2008; and (3) giving her the experience credit as a Grade 21 in April of 2005, even though she asserts she was performing as a Grade 25 and doing the work of a Grade 27. In opposition, FedEx argues that even if Boaz's allegations are true, they do not amount to materially adverse actions under Title VII. As a result, FedEx maintains that Boaz cannot establish a claim of retaliation and, thus, cannot survive summary judgment.

Title VII's anti-retaliation provision forbids an employer from discriminating against an employee because the employee opposed the employer's unlawful practice under Title VII. 42 U.S.C. § 2000e-3. In order to establish a prima facie claim of retaliation, the plaintiff must demonstrate that: (1) she acted in a manner protected by Title VII; (2) the defendant knew of this exercise of protected activity; (3) the defendant subsequently took action that a reasonable employee would have found to be materially adverse; and (4) the adverse action had a causal connection to the protected activity. *See Burlington Northern and Santa Fe Ry. Co. v. White*,

548 U.S. 53, 68 (2006).  In *Burlington*, the Supreme Court clarified that materially adverse actions were not those which are merely "trivial harms" but those which are likely to deter a reasonable employee from filing a charge of discrimination.  *Id.*

In order to determine whether Boaz has demonstrated a prima facie case of retaliation, the court will look at each alleged discriminatory act of FedEx to see whether it constitutes a materially adverse action.  First, Boaz asserts that FedEx retaliated against her by giving her a poor performance review of 2.3 out of 4.0 in June of 2009.  Boaz has not sufficiently shown how her low performance review has significantly limited her income.  Although she asserts that the effect of a 2.3 rating makes her ineligible for promotion, she has not shown that there were opportunities for promotion or that there were other jobs she was qualified for after her review.  In 1999, the Sixth Circuit held that a mid-range performance evaluation was not the type of adverse action contemplated by Title VII.  *Prime v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) ("If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure.")  Under Sixth Circuit authority, Boaz's poor performance review of 2.3 is not material enough to amount to an adverse action under Title VII.

Second, Boaz asserts that FedEx retaliated against her by

"demoting" her to a Grade 22 on June 15, 2008.  FedEx maintains that Boaz transferred jobs and was not demoted.  FedEx argues that this action is not a material adverse action because Boaz did not receive a pay reduction.  The court agrees.  Changing grade levels without a change in wages or benefits is not material enough to amount to an adverse action under Title VII.

Third, Boaz asserts that FedEx retaliated against her by giving her an insufficient experience credit of a Grade 21 employee in April of 2005 although she was performing as a Grade 25 employee and doing the work of a Grade 27 employee.  It is FedEx's policy to give exempt employees engaged in special assignments an experience credit.  Boaz has not shown how being denied a sufficient experience credit is a material adverse employment action.  Regardless, Boaz's claim of retaliation based on an insufficient experience credit given in April 2005 is time-barred.

Boaz has failed to show that FedEx took action that a reasonable employee would have found to be materially adverse.  Accordingly, the court finds that Boaz has not demonstrated a prima facie case of retaliation.  FedEx's motion for summary judgment on Boaz's retaliation claim is granted, and Boaz's motion for summary judgment on this claim is denied.

IV.  CONCLUSION

Based on the reasons stated above, Boaz's motion for partial summary judgment is denied on all counts.  FedEx's motion for

34

summary judgment on the FLSA, THRA, and Title VII retaliation claims is granted, and its motion for summary judgment on the Title VII discrimination claim is denied.

IT IS SO ORDERED this 24th day of September, 2010.


S/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE